1

2

3    **UNITED STATES DISTRICT COURT**

4    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

| | |
|---|---|
| **QUEENIE MARSOOBIAN, BRYAN A. MARSOOBIAN AND JULIE MARSOOBIAN,** | **1:16-cv-1412-LJO-MJS** |
| **Plaintiffs,** | **(Doc. 21)** |
| **v.** | **ORDER GRANTING PLAINTIFFS'** |
| **TRANSAMERICA LIFE INSURANCE COMPANY; McQUEEN KALLIGAN INSURANCE SERVICES, INC.; HILB, ROGAL AND HAMILTON INSURANCE SERVICES OF CENTRAL CALIFORNIA, INC.; WILLIS INSURANCE SERVICES OF CALIFORNIA, INC.; and DOES 1 through 20, inclusive,** | **MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION** |
| **Defendants.** | |

14

15                          **I.   INTRODUCTION**

16         This case was originally filed in Fresno County Superior Court in August 2016 and removed to

17   this Court on September 22, 2016; Defendants Transamerica Life Insurance Company

18   ("Transamerica") McQueen Kalligan Insurance Services, Inc. ("Kalligan") (collectively, "Defendants")

19   filed a joint Motion to Stay (Doc. 6) and separate Motions to Dismiss (Docs 7, 10) on September 29,

20   2016; Plaintiffs filed a Motion to Remand on October 12, 2016 (Doc. 21), and set a hearing for

21   November 18, 2016; and on October 21, 2016, Defendant Willis Insurance Services of California

22   ("Willis") filed a Motion to Dismiss and improperly set a hearing for October 27, 2016 (Doc. 30).  The

23   Court took Transamerica and Kalligan's Motion to Stay and their Motions to Dismiss under

24   submission and reset the hearings on Plaintiffs' Motion to Remand and Willis' Motion to Dismiss for

25   November 22, 2016.  Following the completion of briefing, the November 22, 2016, hearing was

1

1   vacated, and Plaintiffs' and Willis' motions were submitted for decision.

2         For the reasons set forth below, Plaintiffs' Motion to Remand is GRANTED; Defendants'

3   Motions to Stay and Motions to Dismiss and Willis' Motion to Dismiss are denied without prejudice as

4   moot in light of the remand.

5                    II.   **FACTUAL AND PROCEDURAL BACKGROUND**

6   **A.**   ***Marsoobian v. Transamerica, et al.*, 1:16-cv-1090-DAD-EPG ("*Marsoobian* I")**

7         Plaintiffs Queenie Marsoobian, Bryan A. Marsoobian, and Julie Marsoobian ("Plaintiffs") filed

8   suit against Transamerica and Kalligan on June 27, 2016, in Fresno County Superior Court.  (Doc. 1,

9   pp. 9-33.)  The complaint stated claims for bad faith breach of an insurance contract and elder abuse,

10  among others.  According to Plaintiffs, Queenie Marsoobian ("Queenie") is an 84-year-old woman

11  who is the named insured under a Transamerica life insurance policy with an original face value of

12  $500,000.  Bryan Marsoobian and Julie Marsoobian are named beneficiaries under the policy.

13        In 2002, an individual from Kalligan, an insurance broker agency in Fresno, approached

14  Plaintiffs and proposed purchasing a policy on Queenie's life.  Kalligan represented that the life

15  insurance policy on Queenie's life would guarantee Queenie's beneficiaries all the premiums paid on

16  the policy and the full face value of the policy upon Queenie's death.  Plaintiffs were shown a policy

17  illustration indicating they could purchase such a policy with a face value of $500,000 for an annual

18  premium of $12,000, which would remain the same until Queenie was at least 93 years old.  The

19  premiums paid were to be placed in an "accumulated" account, from which deductions would be made

20  for the Cost of Insurance and the remaining funds would accumulate and be available for a cash

21  surrender amount should Plaintiffs decide to cash in the policy prior to Queenie's death.  Kalligan also

22  advised that the accumulation amount was subject to a minimum guaranteed interest rate of 4 percent.

23  Based on these representations, Plaintiffs applied for this policy with Transamerica, which was

24  subsequently issued on July 14, 2002.

25

                                                    2

In May 2016, Transamerica notified Plaintiffs by letter that it was going to increase the Monthly Deduction ("MD") due on the policy, which would effectively raise the annual premium from $12,000 to over $136,000.  Plaintiffs allege the sudden and dramatic MD increase is not truly based on adverse changes in the cost of providing coverage, as represented in the May 2016 notice letter, but rather on Transamerica's desire to avoid its contractual obligation to meet the high interest crediting rates it promised under the policy and to recoup past losses.  If Plaintiffs are unable to maintain the higher MD, they will be forced to surrender their policy for the current cash value or will be required to cancel their policy.  The premature cancellation of Plaintiffs' policy will allow Transamerica to avoid paying the death benefits on the policy for which Plaintiffs have paid premiums for more than a decade.

On July 28, 2016, Transamerica removed the lawsuit to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332 and claiming that Kalligan, a California citizen, was a "sham" defendant whose citizenship must be ignored for purposes of jurisdiction.  (1:16-cv-1090-DAD-EPG, Doc. 1, ¶ 8.)  Transamerica maintained that Kalligan had nothing to do with the sale of the insurance policy to Plaintiffs in 2002, particularly as Kalligan was not even incorporated in California until 2003.  The agent who sold the policy to Plaintiffs was Arsen Marsoobian (Queenie's ex-husband)[1] in his capacity as an authorized insurance agent for another insurance agency.  Because Kalligan did not exist in 2002, it could not have been involved in the sale of the policy.  Transamerica asserted Plaintiffs' claim against Kalligan was patently defective, rendering its joinder fraudulent and its citizenship irrelevant to diversity jurisdiction.

After the parties stipulated to extend the time for Defendants to respond to the complaint, on August 23, 2016, Plaintiffs filed a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i), and the case was closed.  (1:16-cv-1090-DAD-EPG, Docs. 6, 7.)

---

[1] Defendants request the Court take judicial notice of Queenie and Arsen's divorce decree (Doc. 35), which is GRANTED pursuant to Federal Rule of Evidence 201.

**B.**   *Marsoobian v. Transamerica, et al.,* **1:16-cv-01412-LJO-MJS ("*Marsoobian II*")**

Meanwhile, on August 22, 2016, Plaintiffs filed another lawsuit against Transamerica and Kalligan in Fresno County Superior Court, adding Hilb Rogal and Hamilton Insurance Services of Central California ("HRH"), and Willis as defendants.  (Doc. 1, pp. 55-81.)   In this complaint, Plaintiffs allege that HRH, rather than Kalligan, approached and solicited Plaintiffs in 2002 to purchase a universal life insurance policy on Queenie's life.  Plaintiffs allege that at some time in 2008, Willis merged with HRH, and Kalligan assumed responsibility for servicing the life insurance policies sold by HRH at some point after the merger.  (Doc. 1, p. 60, ¶¶ 25-26.)   The remaining allegations regarding Transamerica's policy stayed the same in the second complaint.  Plaintiffs state a breach of contract claim and bad faith contract breach claims against Transamerica in connection with the MD increase, they seek injunctive and restitutionary relief pursuant to California's Unfair Competition Law, and state a claim for elder abuse pursuant to California Welfare & Institutions Code § 15610.30.  Against Kalligan, Willis, and HRH ("Agency Defendants"), Plaintiffs allege claims for professional negligence and negligent misrepresentation.

On September 22, 2016, Defendants Transamerica and Kalligan removed *Marsoobian II* to this Court.  They claim that after removing *Marsoobian I*, their counsel met and conferred with Plaintiffs' counsel about Transamerica and Kalligan's plan to stay the action in light of overlapping class actions pending in the Central District of California and, in the alternative, to dismiss both Defendants.  Transamerica and Kalligan's removal notice states as follows:

> Plaintiffs abruptly dismissed [*Marsoobian I*] – and that same day, filed a second action in state court asserting the same claims against the original defendants and two new defendants, one of which no longer exists.  Had Plaintiffs sought to amend their original complaint after removal by adding a new defendant, their gamesmanship, defective claims, and ability to proceed against the new defendant in a separate action would not have divested this court of jurisdiction.  Recognizing this, they instead attempted to evade federal jurisdiction by dismissing and filing what should have been an amended complaint in state court.  The Court should disallow such tactics.

1  (Doc. 1, 2:16-23.)   According to Transamerica and Kalligan, HRH ceased to exist on December 31,

2  2004, and the claims against the non-diverse Agency Defendants are baseless and conclusory.

3  Because Plaintiffs' voluntary dismissal of the first action was a "transparent 'attempt to subvert the

4  purposes of the removal statute,' [it] therefore should not be permitted."  (Doc. 1, p. 6, ¶ 20 (citing *Lou*

5  *v. Belzberg*, 834 F.2d 730, 741 (9th Cir. 1987)).)

6  ## III.   LEGAL STANDARDS

7  **A.      Removal Jurisdiction**

8          In considering a notice of removal, "it is to be presumed that a cause lies outside the limited

9  jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party

10  asserting jurisdiction."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting

11  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (quotation marks omitted)).

12  Courts "strictly construe the removal statute against removal jurisdiction," and "the defendant always

13  has the burden of establishing that removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.

14  1992).  Any doubts about jurisdiction must be resolved in favor of remand.  *Id.*

15          Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court a claim filed in state

16  court that could have initially been brought in federal court.  28 U.S.C. § 1441(a); *Caterpillar Inc. v.*

17  *Williams*, 482 U.S. 386, 392 (1987).  A district court must remand a case to state court "if at any time

18  before the final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C.

19  § 1447(c).   To exercise diversity jurisdiction, a federal court must find complete diversity of

20  citizenship among the adverse parties, and the amount in controversy must exceed $75,000.  28 U.S.C.

21  § 1332(a).

22  ## IV.   ANALYSIS

23  **A.      Plaintiffs' Motion to Remand is GRANTED**

24          Plaintiffs argue Transamerica and Kalligan have failed to establish complete diversity

25  supporting jurisdiction under Section 1332(a).   Specifically, Transamerica acknowledged in its

1   removal of *Marsoobian I* that Kalligan is a citizen of California, and Defendants have made no effort

2   to address the citizenship of Willis or HRH in removing *Marsoobian II*.   Moreover, because both

3   Willis and HRH were incorporated in California, they are citizens of California as are Plaintiffs,

4   destroying complete diversity under Section 1332.   Willis' and HRH's California citizenship also

5   violates the forum defendant rule in Section 1441(b) which prohibits removal where any defendant "is

6   a citizen of the State in which the action is brought."   28 U.S.C. § 1441(b).

7          In their opposition brief,[2] Kalligan and Transamerica maintain *Marsoobian II* is "effectively a

8   post-removal amendment of the First *Marsoobian* Action."   According to Defendants, naming the

9   Agency Defendants was merely a method to avoid suing Arsen Marsoobian while avoiding federal

10  diversity jurisdiction.   Defendants further suggest that proceeding to seek amendment to add

11  purportedly frivolous claims against the Agency Defendants in *Marsoobian I* would surely have been

12  disallowed by the *Marsoobian I* court, so Plaintiffs filed a Rule 41 dismissal so they could to refile

13  their conclusory and baseless claims against the Agency Defendants in state court.   This second action

14  is clearly an attempt to circumvent removal; all the requirements of diversity jurisdiction were met in

15  *Marsoobian I* and "should now be considered satisfied by the amended version of the Action now

16  before this Court."

17         According to Transamerica and Kalligan, even ignoring Plaintiffs' conduct in dismissing the

18  original complaint and refiling a different version in state court, the non-diverse entities are all sham

19  defendants whose citizenship should be disregarded because the claims against them are frivolous.

20  Specifically, Transamerica and Kalligan argue any claims against the non-diverse Agency Defendants

21  regarding purported misrepresentation concerning the terms of the policy should have been discovered

22  by Plaintiffs when they received and read the Policy, which makes clear on its face that Transamerica

23  has discretion to set the MD rates at any amount up to the guaranteed maximum rate.   Thus, the

24  _____

25  [2] Willis filed a notice of joinder with Kalligan and Transamerica's opposition to Plaintiffs' motion for remand.  (Doc. 36.)

1    argument continues, Plaintiffs had notice of the falsity of any alleged representations about the MD

2    rates by July 2002, when the policy was issued. Because the applicable statutes of limitations for the

3    negligence and misrepresentation claims against the Agency Defendants are two and three years,

4    respectively, but no claims against the Agency Defendants were made until 2016, Transamerica and

5    Keller maintain that the claims are clearly time barred and therefore are frivolous, under which

6    circumstances the Agency Defendants must be dismissed as fraudulently joined and their citizenship

7    ignored for purposes of jurisdiction.

8        **1.    Jurisdiction Cannot Be Predicated on *Marsoobian I***

9        Defendants' removal notice states the basis for jurisdiction is predicated on *Marsoobian I*, over

10   which the Court had diversity jurisdiction as the claims against non-diverse Kalligan were patently

11   defective and Kalligan's joinder was fraudulent.  Kalligan and Transamerica contend that Plaintiffs' act

12   of voluntarily dismissing *Marsoobian I* and subsequently filing an amended version in state court were

13   meant to subvert the removal of *Marsoobian I*, and the Court therefore is empowered to exercise

14   jurisdiction over this suit to police such gamesmanship.   For this proposition, Kalligan and

15   Transamerica cite *Lou v. Belzberg*, 834 F.2d 730, 741 (9th Cir. 1987), and *Frith v. Blazon-Flexible*

16   *Flyer, Inc.*, 512 F.2d 899, 900-01 (5th Cir. 1975).

17       In *Frith*, the plaintiff filed suit in state court against Blazon-Flexible Flyer, Inc. and Western

18   Auto Supply Company, Inc. ("Western") ("*Frith I*").  Upon removal to federal court, the only non-

19   diverse defendant, Western, was found to be fraudulently joined because it was not a proper legal

20   entity.  Western was dismissed, and the plaintiff's motion to remand was denied.  Two weeks after this

21   denial of remand, the plaintiff filed a subsequent suit in state court naming the individual owner and

22   operator of Western, alleging the same causes of action as against Western in the first case ("*Frith II*").

23   The defendants removed *Frith II*, and it was assigned to a different district judge.  After determining

24   the owner of Western was not fraudulently joined, the court remanded *Frith II* for lack of jurisdiction.

25   Upon motion from the defendants before it, the *Frith I* court enjoined the plaintiff from any further

7

prosecution of *Frith II*, then pending in state court following remand.  On appeal of the order denying the plaintiff's motion to remand in *Frith I*, the Fifth Circuit recognized generally that where a second suit is filed in state court in an attempt to subvert the purposes of the removal statute, the court is justified and authorized to enjoin the state court proceedings.  Because the *Frith II* court found no fraudulent joinder, however, the appellate court concluded this was an implicit finding that *Frith II* was not filed in an effort to subvert the removal process.  The court held the remand order in *Frith II* was binding on *Frith I*, and collateral estoppel precluded the subsequent injunction issued by *Frith I*.

In *Belzberg*, a shareholder filed a derivative action alleging violations of state fiduciary obligations, a claim under section 17(a) of the Securities Act of 1933, and claims under the RICO statute against the various majority shareholders, financial institutions, and corporate directors ("Belzberg Defendants").  The Belzberg Defendants removed the action to federal court and sought a transfer of venue, while Lou requested remand.  The district court denied the motion to remand because the section 17(a) claim – which generally was not removable – was not cognizable, and the RICO claim provided federal question jurisdiction as it was separate and independent from Lou's other claims.  The district court then transferred the action to the Southern District of New York under 28 U.S.C. § 1404 in the interests of justice.

About a month after the *Belzberg* action was removed, Lou's counsel assisted another shareholder in filing a similar derivative action against the Belzbergs and several new defendants (the *Mickler* action).  The *Mickler* complaint asserted additional state law claims and omitted the federal claims alleged in *Belzberg*.  Upon motion by the Belzberg Defendants, the *Belzberg* district court enjoined prosecution of the *Mickler* action.

Lou appealed the denial of her motion to remand in *Belzberg*, and the Ninth Circuit considered – among other things – the propriety of enjoining the *Mickler* action.  The injunction had been issued

1  under a 28 U.S.C. § 1446(e),[3] which the Belzberg Defendants argued permitted a court to enjoin a

2  second state court suit filed in an attempt to subvert the purposes of the removal statute.  Citing *Frith*,

3  the appellate court agreed that where a second state court suit is fraudulently filed in an attempt to

4  subvert the removal of a prior case, a federal court may enjoin the prosecution of the second lawsuit in

5  state court.  The court concluded, however, the injunction issued by the *Belzberg* district court was not

6  providently granted because there was no support that *Mickler* was filed fraudulently or in an attempt

7  to subvert the removal statute:  the *Mickler* action involved different plaintiffs, additional counsel,

8  additional defendants, and only state law claims.

9       *Belzberg* and *Frith* do not provide convincing support for Defendants' jurisdictional argument.

10  Similar to the second state court cases filed in *Belzberg* and *Frith*, there is no compelling evidence that

11  the filing of *Marsoobian II* was an attempt to subvert the removal process.  Transamerica and Kalligan

12  make much of Plaintiffs' use of Rule 41 to dismiss the original action as an effort to subvert the

13  removal process by amending the action in a manner that would not have been permitted had the case

14  stayed in federal court.[4]   Rule 41, however, is a legitimate procedural vehicle and provides a plaintiff

15  an "absolute right to voluntarily dismiss his action prior to service by the defendant of an answer or a

16  motion for summary judgment."  *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997).  Given

17  the procedural posture of *Marsoobian I*, no rule required Plaintiffs to seek amendment. The removal

18  context does not permit the court to curtail Plaintiffs' dismissal rights under Rule 41:  "Th[e] [filing a

19  dismissal notice] itself closes the file.  There is nothing the defendant can do to fan the ashes of that

20  action into life and the court has no role to play.  This is a matter of right running to the plaintiff and

21  may not be extinguished or circumscribed by adversary or court."  *Pedrina v. Chun*, 987 F.2d 608, 610

22

23  [3] 28 U.S.C. § 1446(e) has since been amended and no longer contains authority for the issuance of an injunction.

24  [4] Defendants note Plaintiffs have chosen not to sue Arsen Marsoobian, Queenie's ex-husband and the individual agent who
originally sold her the policy.  Defendants argue the failure to name him as a defendant is suspect and shows the claims
against the Agency Defendants (Kalligan, Willis, and HRH) are a sham.  This, however, is merely Defendants' suspicions
25  about Plaintiffs' subjective motivation.  That Arsen Marsoobian is not named as a defendant does not, by itself, undercut the
allegations against Kalligan, Willis, and HRH.

1  (9th Cir. 1993) (quoting *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963)).

2    Moreover, the record does not reflect Plaintiffs were aware at the time *Marsoobian I* was filed

3  of the exact nature of Kalligan's role in servicing the policy, when Kalligan became involved, or the

4  correct identity of the agency through which the policy was originally sold.  While Queenie's ex-

5  husband, Arsen Marsoobian, may have been involved in selling the policy to Plaintiffs as evidenced by

6  the disclosure statement, this does not definitively establish what Plaintiffs knew about the agency for

7  which he worked.  The shift in allegations between the first and second complaints with regard to the

8  Agency Defendants appears to be based on facts obtained after meet and confer sessions among the

9  parties' counsel.  The record does not convince the Court that Plaintiffs are involved in any improper

10  gamesmanship to avoid suing Arsen Marsoobian by naming non-diverse Agency Defendants

11  frivolously for the sole purpose of avoiding federal court.

12    And, even if the Court were to find Plaintiffs' second lawsuit was a subversive attempt to

13  circumvent removal, neither *Belzberg* nor *Frith* supports the extension of jurisdiction to *Marsoobian II*

14  that Defendants urge.  *Belzberg* and *Frith* dealt with the district court's power to enjoin duplicative,

15  subsequent state court proceedings that were initiated after the court declined to remand an original

16  suit; neither addressed extending jurisdiction from a dismissed prior suit to a second suit.  *Marsoobian*

17  *I* was dismissed unilaterally by Plaintiffs under Rule 41(a)(1)(A)(i), which was their absolute and

18  unfettered right; this immediately divested the Court of all jurisdiction over that action.  *See*

19  *Commercial Space Mgm't Co., Inc. v. The Boeing Co., Inc.*, 193 F.3d 1074, (9th Cir. 1999) (A Rule 41

20  dismissal leaves the parties "as though no action had been brought"); *Am. Soccer Co. v. Score First*

21  *Enters.*, 187 F.3d 1108, 1110 (9th Cir. 1999) (right to voluntary dismissal "may not be extinguished or

22  circumscribed by adversary or court").  The interpretation of *Belzberg* and *Frith* that Defendants urge

23  works an end-run around Rule 41(a)(1)(A)(i) by resurrecting the Court's purported jurisdiction over

24  *Marsoobian I* and then extending that jurisdiction over a different action with a different set of

25  defendants.  This theory of jurisdiction is untenable.

2.        **Defendants' Fraudulent Joinder Theory is Untimely**

Because *Marsoobian I* and Plaintiff's conduct in filing a second suit have no bearing on the Court's jurisdiction over *Marsoobian II*, the Court turns to any alternative bases for jurisdiction articulated in the removal petition.  Plaintiffs argue the removal notice does not attempt to set forth the details of jurisdiction other than to note it is predicated on diversity jurisdiction under 28 U.S.C. § 1332 and *Marsoobian I*.  In their opposition brief, Defendants assert that all non-diverse Agency Defendants are fraudulently joined because the claims against them are patently defective as barred by the statutes of limitations.  As such, their California citizenship must be disregarded for jurisdictional purposes and diversity exists under this theory.

A defendant seeking to remove a case to federal court must do so within thirty days of being served with the complaint.  28 U.S.C. § 1446(b).  "The Notice of Removal 'cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.'"  *ARCO Environmental Remediation, L.L.C. v. Department of Health and Environmental Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000) (quoting *O'Halloran v. University of Washington*, 856 F.2d 1375, 1381 (9th Cir. 1988)).  However, a defendant may amend the removal notice after the thirty day period has closed to correct a defective allegation of jurisdiction.  *Id.* (citing 28 U.S.C. § 1653; 16 Moore's Federal Practice § 107.30[2][a][iv]).  Allegations of fraudulent joinder constitute a substantive basis for removal and must be raised before the 30-day deadline for removal expires.  *Awasthi v. InfoSys Technologies, LTD*, No. C-10-0783-JCS, 2010 WL 2077161, at *4 (N.D. Cal. May 21, 2010); *see also Dean Witter Reynolds, Inc. v. Swett & Crawford*, No. C-92-3841-JVP, 1992 U .S.  Dist. LEXIS 20093, at *2–3 (N.D. Cal. Dec. 23, 1992) (fraudulent joinder theory not raised in removal notice are time-barred when raised for first time in opposition to motion to remand); *Cohen v. GTE Gov't. Sys. Corp.*, 1993 U.S. Dist. LEXIS 7914, at *4–5 (N.D. Cal., Apr. 6, 1993) (same); *Tincher v. Ins. Co. of State of Penn.*, 268 F. Supp.2d 666 (E.D.Va. 2003) (same).  Fraudulent joinder occurs when a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of

1    the state . . . ."  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1988).

2           The removal notice is devoid of any mention of fraudulent joinder, other than in reference to

3    *Marsoobian I.*  (Doc. 1, pp. 1-7.)  The passing reference to the "baseless, conclusory allegations as to

4    the non-diverse parties (which are defeated by documents already provided to Plaintiffs' counsel)," is

5    not a sufficient articulation of a fraudulent-joinder theory of diversity jurisdiction.   Although the

6    factual background section of the removal notice cites selective language from the policy and a

7    disclosure form showing that Queenie acknowledged the policy and the policy illustration document,

8    this in no way explained or hinted that the policy language and disclosure acknowledgement supported

9    a theory that the claims against the non-diverse Agency Defendants are time barred.  To construe the

10   removal notice as containing a fraudulent joinder theory on a statute of limitations ground, it would

11   have to be assumed the single phrase stating the allegations against the non-diverse parties were

12   baseless and conclusory meant those non-diverse parties were fraudulently joined and extrapolated

13   further that citation of the policy and disclosure language meant the claims against the non-diverse

14   Agency Defendants were barred by unreferenced statutes of limitations.  Without any articulation of

15   the fraudulent joinder theory or the ground supporting it in the removal notice, the arguments in the

16   opposition brief do not constitute an "amendment" to the removal notice, but represent a substantive

17   basis for removal stated for the first time after the expiration of the 30-day deadline in Section

18   1446(b).  The Court will not consider this untimely theory of jurisdiction.

19          Examining the complaint itself, the Agency Defendants are each alleged to be California

20   citizens (Doc. 1, p. 56, ¶¶ 5-7), as are Plaintiffs (Doc. 1, p. 56, ¶¶ 1-3), which destroys complete

21   diversity.  Defendants concede as much in their opposition, but argue the Agency Defendants are sham

22   and should be disregarded.  (Doc. 34.)  Due to the lack of complete diversity, the Court is without

23   subject matter jurisdiction and the case must be remanded.

24   **B.    Plaintiffs' Request for Attorneys' Fees is DENIED**

25          Plaintiffs seek attorney's fees pursuant to Section 1447(c), asserting that Defendants lacked an

12

1   objectively reasonable basis for removal.

2       28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just

3   costs and any actual expenses, including attorney fees, incurred as a result of removal."  The decision

4   to award such fees is within the district court's discretion and does not require a finding of bad faith

5   because the purpose of such an award is not punitive, but rather is designed to reimburse a plaintiff for

6   wholly unnecessary litigation costs caused by the defendant.  *Moore v. Permanente Med. Grp., Inc.*,

7   981 F.2d 443, 446-47 (9th Cir. 1992).

8       "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where

9   the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an

10  objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, 546

11  U.S. 132, 141 (2005).  "Removal is not objectively unreasonable solely because the removing party's

12  arguments lack merit and the removal is ultimately unsuccessful." *Id.* (citing *Lussier v. Dollar Tree*

13  *Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).  "Rather, the court should assess 'whether the

14  relevant case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the

15  law at the time of removal.'"  *Id.*  (quoting *Lussier*, 518 F.3d at 1066); *see also Patel v. Del Taco, Inc.*,

16  446 F.3d 996, 999–1000 (9th Cir. 2006).

17      Plaintiffs maintain that the removal notice merely referenced an earlier action and asked the

18  Court to assert subject matter jurisdiction based on the previously filed action.  Based on the well-

19  settled law regarding Plaintiffs' unfettered right to unilaterally dismiss an action under Rule

20  41(a)(1)(A)(i), Plaintiffs assert it is difficult to understand why Defendants attempted to remove the

21  action.  Plaintiffs seek $5,889 for attorney's fees in responding to the removal petition.  (Doc. 21-1,

22  15:2-8.)

23      Defendants oppose Plaintiffs' request, arguing their basis for removal was reasonable in that

24  Plaintiffs were attempting to evade federal jurisdiction, which was shown through refusing to name as

25  a defendant the actual person who sold the policy and because the claims against the HRH, Willis, and

1  Kalligan are time-barred.

2       The Court declines to award attorney's fees. While Defendants' interpretation of *Belzberg* and

3  *Frith* was unpersuasive, this basis for removal does not appear entirely frivolous or objectively

4  unreasonable – albeit, by a very narrow margin. Because *Belzberg* and *Frith* applied to an entirely

5  different procedural posture and the legal issue in those cases did not involve removal jurisdiction,

6  their persuasive value is extremely diminished, as discussed above. And, as Plaintiffs note, the

7  argument for jurisdiction predicated on *Marsoobian I* is further undercut by the well-settled law

8  regarding Rule 41 dismissals, which deprive the court of jurisdiction. Despite that Defendants'

9  argument in this regard is weak and lacking persuasive value, this does not render it wholly and

10 objectively unreasonable or frivolous. In a general sense, *Belzberg* and *Frith* deal with the district

11 court's broad power to remedy subversion of the removal process, albeit under a prior version of

12 Section 1446. An argument that an extension of this broad power also included an extension of the

13 Court's removal jurisdiction is not wholly unreasonable. Further, the fraudulent joinder theory of

14 jurisdiction is reasonable, even if untimely asserted.

15 **C.    Transamerica and Kalligan's Motions to Stay and to Dismiss; Willis' Motion to Dismiss**

16      As the Court lacks subject matter jurisdiction over this action, Defendants' Motion to Stay and

17 their Motions to Dismiss and Willis' Motion to Dismiss are rendered moot and denied without

18 prejudice for that reason.

19                    **V.    <u>CONCLUSION AND ORDER</u>**

20      For the reasons stated above, it is HEREBY ORDERED that:

21      1.    Plaintiffs' Motion to Remand is GRANTED;

22      2.    Plaintiffs' Request for Attorney's Fees is DENIED;

23      3.    Defendants' Motion to Stay and Motions to Dismiss are denied without prejudice as

24            moot;

25      4.    This case shall be remanded to the Fresno County Superior Court for further

                                    14

1   proceedings;

2   5.   A copy of this order shall be served on the Fresno County Superior Court

3   Clerk's Office; and

4   6.   The Clerk of the Court for the Eastern District of California is DIRECTED to close this

5   case.

6

7   IT IS SO ORDERED.

8   Dated:   __**December 7, 2016**__          _____**/s/ Lawrence J. O'Neill**_____
                                           UNITED STATES CHIEF DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25